# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BARRY NEWMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 13 C 6942 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff Barry Newman's (Newman) motion for summary judgment is granted in part and denied in part, and Defendant Social Security Administration's (SSA) motion is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

## BACKGROUND

In February 2011, Newman applied for Social Security Disability Insurance benefits (DIB), contending that he suffered from certain physical impairments which significantly limited his ability to perform work activities. Newman's application was denied. After an evidentiary hearing before an Administrative Law Judge

(ALJ), the ALJ denied the claim for DIB, and the Appeals Council subsequently denied Newman's request for review. Newman has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. SSA has filed a motion for summary judgment seeking an affirmance of the ALJ's decision.

**LEGAL STANDARD**

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

**DISCUSSION**

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered

conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, [s]he is not disabled." *Id.*

In the instant appeal, Newman argues: (1) that the ALJ erred in assessing Newman's credibility by mischaracterizing evidence, and (2) that the ALJ erred by failing to properly determine Newman's RFC.

I. Assessment of Newman's Credibility

Newman argues that the ALJ mischaracterized the evidence in the record and improperly evaluated the credibility of Newman's testimony. Credibility assessments made by an ALJ are given "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation, . . . and must support credibility findings with evidence in the record"). The ALJ found that Newman's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Newman, but that Newman's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (AR 20).

3

In the instant action, the ALJ indicated that Newman's computerized topography (CT) scan of September 2010 demonstrated "moderate bilateral neuroforaminal stenosis at L3-4 and multilevel degenerative moderate stenosis at L1-2 and L4/5 and moderate to severe stenosis at L2-3 and L3-4." (AR 18, 21). However, the record indicates that the September 2010 CT scan found "severe" right subarticular zone stenosis at L1/2, "moderate[ly] severe" spinal stenosis at L2/3, "severe" spinal stenosis and moderate foraminal stenosis at L3/4, a "disk bulge" abutting the nerve roots at S1, and a "developmentally slender lumbar spinal canal." (AR 308-09). An ALJ must evaluate the record in its entirety in assessing the claimant's credibility. *See Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009)(citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)(remanding where ALJ mischaracterized record)). As indicated above, the ALJ not only reduced the severity of Newman's stenosis, but the ALJ failed to account for Newman's disc bulge and developmentally slender spinal canal, which Newman claimed not only caused him pain, but also resulted in a "greater degree of pain than an ordinary person would suffer." (P SJ Mem. 10)

In its motion for summary judgment, the SSA makes arguments for variations in impairment severity compared to those shown by imaging, citing to a medical publication authored by a Harvard radiologist. (D SJ Mem. 1). However, the SSA has not shown that the ALJ considered such article, and the SSA's arguments that cite to a report which was not considered by the ALJ at the time of her decision are improper since "the Commissioner may not generate a novel basis for the ALJ's

4

determination" on appeal. *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)(stating that "[u]nder the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace")(citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) and *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)).

The ALJ also found that Newman's arthritis of the hips was "only moderate," (AR 19), which would be consistent with Newman's March 2010 medical reports that noted "moderate bone-on-bone degenerative arthritic changes." (AR 306). However, Newman's more recent medical exam records from September 2011 reflect "advanced changes of osteoarthritis in both hips." (AR 351). On remand, an ALJ "must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry*, 580 F.3d at 477 (further explaining that "[a]though these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"). In this case, as indicated above, the ALJ failed to account for Newman's greater degree of arthritis, as well as its impact on his other physical impairments. As Newman points out, such medical findings corroborate his claims that he suffers from more serious physical impairments than described by the ALJ. Thus, the ALJ must also adequately evaluate the whole record and explain her basis as to analyzing Newman's symptoms if she reaches the conclusion that Newman lacks credibility.

II. Residual Functional Capacity Determination

Newman also argues that the ALJ erred in her RFC determination. The RFC determination "is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must base the RFC determination "on all the relevant evidence in the record." *Id.*; *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)(stating that an ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence").

In the instant action, the ALJ found that Newman has the residual functional capacity to perform light work, except for no more than occasional climbing, stooping, kneeling, crouching, and crawling. (AR 19). The ALJ also found that Newman should avoid exposure to machinery. (AR 22). The ALJ further found that Newman is capable of performing past relevant work as a print shop supervisor and print sales representative. (AR 23). The ALJ stated that she made the RFC determination "[a]fter careful consideration of the entire record," and reiterated certain parts of the record. (AR 19). An ALJ must do more than provide conclusory statements and must build a logical bridge from the record to her conclusions. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)(stating that "[i]n rendering a decision, an ALJ must build a logical bridge from the evidence to h[er] conclusion")(internal quotations omitted)(quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). It is true that an ALJ need not point to every portion of the

record. *See id.* (stating that the ALJ "need not provide a complete written evaluation of every piece of testimony and evidence"). However, in this case, the ALJ failed to adequately explain how the record supported her RFC finding. In addition, although the ALJ assessed Newman's physical limitations along with certain references to the record, the ALJ failed to address certain portions of the record completely, such as Newman's disk bulge abutting the nerve roots at S1 and his developmentally slender spinal canal. The ALJ also failed to note that Newman's "bone-on-bone" degenerative arthritis had escalated, (AR 306), as the record reflects a greater degree of severity than "moderate." (AR 351). The ALJ failed to explain how Newman would be able to perform light work with such limitations. Such limitations would have been relevant particularly since the vocational expert testified that Newman previously performed his print sales representative job "at the medium exertional level." (AR 23). Although the ALJ did not adequately address the RFC determination, Newman has not pointed to sufficient evidence in the record to support any particular finding in his favor as to his RFC at this juncture. Newman has shown that a remand is warranted to provide an opportunity to the ALJ to conduct an additional investigation as to the RFC and to make a new RFC determination. *See Terry*, 580 F.3d at 477 (stating that "[o]n remand, the ALJ should evaluate whether [the claimant]'s additional impairments affect her ability to work"). Therefore, based on the above, the instant action is remanded to the SSA for further proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, Newman's motion for summary judgment is granted in part and denied in part, and the SSA's motion for summary judgment is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

                                                  _____
                                                  Samuel Der-Yeghiayan
                                                  United States District Court Judge

Dated: September 29, 2014